J-S17015-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHARLES EDWARD FISHER | : | |
| | : | |
| Appellant | : | No. 22 EDA 2022 |

Appeal from the PCRA Order Entered November 22, 2021
In the Court of Common Pleas of Bucks County Criminal Division at
No(s):  CP-09-CR-0000408-2019

BEFORE:  BOWES, J., LAZARUS, J., and STABILE, J.

MEMORANDUM BY BOWES, J.:                    **FILED JUNE 17, 2022**

Charles Edward Fisher appeals from the November 22, 2021 order denying and dismissing his petition pursuant to the Post-Conviction Relief Act ("PCRA").  We affirm.

The PCRA court prepared an apt summary of the factual history of this case, which provides as follows:

> On June 2, 2018, Officer Jeffrey Rhodunda ("Officer Rhodunda") of the Falls Township Police Department was dispatched to a head-on traffic collision on 275 Lincoln Highway, Falls Township, Bucks County, Pennsylvania.  When Officer Rhodunda arrived at the scene, he observed a Ford Escape on the side of the road on the northbound side of Lincoln Highway.  Rhodunda also observed a black Mercury Mariner, registered to Michael Carlino ("the victim"), on the shoulder of the roadway on the northbound side of Lincoln Highway.  The victim was swiftly transported to St. Mary Hospital in Langhorne, Pennsylvania ("St. Mary's") where he succumbed to his injuries and later died.
>
> Officer Rhodunda spoke with the registered owner of the Ford Escape, Kassidy Parell ("Parell").  She stated that James Mayger

("Mayger") was the driver. However, when Officer Rhodunda spoke with Mayger, he said that Appellant had asked him to lie to officers and say [Mayger] was driving [at the time of the accident] because Appellant had been drinking all day. Meanwhile, another officer at the scene, Corporal Nicholas Pinto ("Corporal Pinto") interviewed Appellant who was covered in dirt and complaining of pain in his hip and foot. As they talked, Corporal Pinto noticed a strong odor of alcohol emanating from Appellant's person. Corporal Pinto also observed Appellant to have bloodshot, glassy eyes . . . . Appellant's foot injury prevented officers from performing field sobriety tests at the scene. Appellant was transported to St. Mary's for medical treatment, where he consented to a DNA sample but refused a legal blood draw. After obtaining a warrant for Appellant's medical records, officers consulted with a forensic toxicologist, who was able to calculate Appellant's blood-alcohol concentration ("BAC"). This toxicologist concluded Appellant's BAC was anywhere between .096% and .108% at the time of his blood draw.

Through a subsequent investigation, Officer Rhodunda determined that Appellant, operating the Ford Escape, was traveling southbound on Lincoln Highway when he crossed four lanes of traffic and hit the northbound-traveling [vehicle driven by the victim] head-on. An accident reconstruction determined that Appellant was incapable of safe driving due to alcohol intoxication, he was the cause of the vehicle accident, and that accident caused the victim's death.

PCRA Court Opinion, 1/31/22, at 1-2 (cleaned up). On August 19, 2019, Appellant entered an open guilty plea to driving under the influence ("DUI"), simple assault, and homicide by vehicle while DUI. Sentencing was deferred to permit the preparation of a pre-sentence investigation ("PSI") report.

On December 16, 2019, Appellant's sentencing commenced. Following impact statements provided by the victim's friends and family, Appellant's counsel addressed the court and attempted to introduce a purported

toxicology report documenting the chemicals present in the victim's body at the time of the accident. The following exchange took place:

> [DEFENSE COUNSEL]: I would also like to pass this up to Your Honor. . . . This would be D-2. If Your Honor can just take a look at the second and third page. This is obviously a tragic situation, but the decedent also had substances in his body that day, too, and obviously it's not a civil case, but the last clear chance, the last clear chance to stop the situation, I just like Your Honor to note –
>
> THE COURT: Are you trying to attribute some fault –
>
> [DEFENSE COUNSEL]: Not at all.
>
> THE COURT: -- in this case?
>
> [DEFENSE COUNSEL]: It's a criminal matter. But it should be noted, it should be noted, that there is an item in the decedent's body, which is a non-barbiturate hypnotic without analgesic activity, in addition to barbiturates and cannabinoids. He received no citations. He was – obviously this is not that situation. He passed away. It's tragic.
>
> Again, [Appellant] could have had a day in a trial with 12 people and try to argue –
>
> THE COURT: Perhaps that's what he ought to do.
>
> [DEFENSE COUNSEL]: I'm just saying, he did the thing as a responsible person, Your Honor. He took a place. He faced up to his responsibility. In a few minutes, he's going to speak to Your Honor. But will all of those issues, [Appellant] came forward as a man and owed up to his responsibility. That's what he's here to do today.

N.T. Sentencing, 12/16/19, at 20-22. Thereafter, Appellant addressed the sentencing court, apologizing to the victim's supporters and generally accepting responsibility for his actions. *Id*. at 23-29.

The Commonwealth briefly responded to the allegations concerning the victim's alleged intoxication:

> THE COMMONWEALTH: Judge, just as to the lab report of [the victim], it was caffeine and nicotine metabolite[s] in his blood. There was a barbiturate. I'd have to review his medical records, but I think it was administered by the hospital.
>
> THE COURT: It's really irrelevant, as the cause of death here was clearly at the hands of [Appellant].
>
> THE COMMONWEALTH: There were no cannabinoids. I felt that I should clear the record as to that point.

*Id*. at 29-30. The Commonwealth also pointed out that Appellant had attempted to lie about his role in the accident at the scene. *Id*. at 31 ("At the scene of the crash, . . . you have an attempt to blame others, lie, have others lie on his behalf, and that was all instead of going to check on [the victim].").

In handing down Appellant's sentence, the trial court expressed displeasure with defense counsel's attempt to shift blame upon the victim. *Id*. at 33 ("I don't like that you have tried to push blame elsewhere, to push blame perhaps to one of your passengers. But to shift blame to the decedent, frankly, that feeds into my belief that you have absolutely no remorse in this matter except for how it impacts you."). Initially, the court imposed consecutive incarceration sentences of forty-eight to 120 months for homicide by vehicle while DUI, four to eight months for simple assault, and one to six months for DUI. However, Appellant filed a motion for reconsideration that the court granted by changing his DUI sentence to run concurrently to his conviction for homicide by vehicle while DUI due to merger concerns. Thus,

- 4 -

ultimately, Appellant received an aggregate sentence of four years and four months to eleven years of incarceration.

Appellant did not file a direct appeal and his judgment of sentence became final for the purposes of the PCRA on March 20, 2020. *See* 42 Pa.C.S. § 9545(b)(3). On November 2, 2020, Appellant filed a timely, *pro se* PCRA petition. PCRA counsel was appointed to represent Appellant and an amended petition was filed alleging that defense counsel was ineffective for, *inter alia*, introducing the erroneous information concerning the victim's blood test results. *See* Amended PCRA Petition, 4/16/21, at ¶¶ 15-26. The PCRA court held a hearing concerning Appellant's claims for relief, at which Appellant, defense counsel, and the assistant district attorney testified. Ultimately, the PCRA court denied Appellant's petition on the merits.

Appellant filed a timely notice of appeal to this Court. Both Appellant and the PCRA court have timely complied with the strictures of Pa.R.A.P. 1925. In his brief, Appellant has raised a single issue for our consideration: "Did the [PCRA court] err in denying Appellant's request for PCRA relief where Appellant's counsel presented false, inflammatory information about the victim at sentencing?"[1] Appellant's brief at 4.

_____

[1] In his PCRA petition and Rule 1925(b) statement, Appellant also raised a claim concerning ineffectiveness with respect to the advice provided by counsel during the plea process. That claim has been abandoned in Appellant's brief and is waived. *See Commonwealth v. Heggins*, 809 A.2d 908, 912 n.2 (Pa.Super. 2002) ("[A]n issue identified on appeal but not developed in the appellant's brief is abandoned and, therefore, waived.").

Our standard of review over an order denying a petition under the PCRA is "whether the determination of the PCRA court is supported by the evidence of record and free of legal error." **Commonwealth v. Rizvi**, 166 A.3d 344, 347 (Pa.Super. 2017). The scope of our review "is limited to the findings of the PCRA court and the evidence on the record of the PCRA court's hearing, viewed in the light most favorable to the prevailing party." **Commonwealth v. Reyes-Rodriguez**, 111 A.3d 775, 779 (Pa.Super. 2015). We are bound by the PCRA court's factual findings and credibility determinations to the extent that such conclusions are supported by the record. **Id**. However, we review the legal conclusions of the PCRA court *de novo*. **Id**.

Appellant's argument on appeal concerns ineffective assistance of counsel. Specifically, he asserts the following straightforward argument: "Appellant's counsel was ineffective because he presented false and inflammatory information regarding the victim at sentencing. The trial court relied upon [defense] counsel's misrepresentations in fashioning [Appellant's] sentence, stating that Appellant blamed the victim and, therefore, showed a lack of remorse." Appellant's brief at 9. Appellant argues that the ultimate result of defense counsel's erroneous references to the victim was to "shift the focus of the trial court away from consideration of Appellant's character" while essentially blaming Appellant for counsel's error. **Id**. at 11.

In order to prevail, Appellant must satisfy the three-part inquiry that Pennsylvania courts have "refined" from **Strickland v. Washington**, 466

U.S. 668 (1984) and **Commonwealth v. Pierce**, 527 A.2d 973 (Pa. 1987) by showing that: (1) his underlying claim is of arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the petitioner suffered actual prejudice as a result. **Commonwealth v. Sarvey**, 199 A.3d 436, 452 (Pa.Super. 2018). Counsel is presumed to be effective, and the burden of demonstrating ineffectiveness rests on the defendant. **Commonwealth v. Johnson**, 236 A.3d 63, 68 (Pa.Super. 2020) (*en banc*). Finally, if a claim fails under "any required element of the **Strickland**/**Pierce** test, the court may dismiss the claim on that basis." **Id**.

In its Rule 1925(a) opinion, the trial court addressed this issue and concluded that Appellant had not established the existence of prejudice:

> Although [defense counsel's] choice to admit [the victim's] toxicology report (and cite it incorrectly) was questionable, it "was not of such magnitude that it could have reasonably had an adverse effect on the outcome of the proceedings." **Commonwealth v. Gribble**, 863 A.2d 455, 472 (Pa. 2004). . . .
>
> [Defense counsel's] admission of the toxicology report was inconsequential in [the] face of the totality of other relevant factors. In sentencing, this [c]ourt considered the information presented through the defense packet of character witnesses, information from the correctional facility, Appellant's PSI report, and statements provided by [the victim's] family. Predominantly, however, this [c]ourt was guided by Appellant's actions immediately before, during, and after the accident, as well as his troubling history of violence towards women. Appellant's attempts to shift blame indicated that he had not fully understood the gravity of his actions. Appellant, however, did not merely attempt to shift blame at his sentencing hearing, but also at the scene of the accident itself, where instead of inquiring about [the victim], who was audibly pleading for help, he coached his passengers say Mayger was the driver. . . .

- 7 -

Therefore, Appellant has failed to demonstrate a reasonable probability that [defense counsel's] admission of the toxicology report prejudiced him to the point that the proceedings would have resulted in a different sentence.

Trial Court Opinion, 1/31/22, at 8-9. We agree.

Under these circumstances, prejudice "means demonstrating there is a reasonable probability that, but for counsel's error, the outcome of the proceedings would have been different." *Commonwealth v. Keaton*, 45 A.3d 1050, 1061 (Pa. 2012). Instantly, Appellant asserts that he would have received a reduced sentence in the absence of defense counsel's erroneous introduction of the toxicology report. However, we note that the PCRA court was the same jurist that originally sentenced Appellant. In its Rule 1925(a) opinion, it clearly stated that counsel's actions in this case did **not** impact the sentence imposed upon Appellant. *See* Trial Court Opinion, 1/31/22, at 8-9.

Our Supreme Court has held that a defendant has not satisfied the requirement of prejudice where the prior court states that it would have imposed the same sentence even in the absence of counsel's complained-of error. *See Commonwealth v. Reaves*, 923 A.2d 1119, 1132 (Pa. 2007) (holding prejudice not established where "the PCRA judge, who . . . was the same judge who initially sentenced [defendant] made clear in the PCRA proceedings that he would have imposed the same sentence" despite counsel's alleged ineffectiveness); *see also*, *e.g.*, *Commonwealth v. Reider*, 494 A.2d 461, 466 (Pa.Super. 1985) (holding that erroneous information

- 8 -

presented at sentencing would not support a finding of ineffective assistance where the information "had no effect on the sentences as given").

Accordingly, we discern no abuse of discretion or error of law in the PCRA court's denial of Appellant's petition for relief.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/17/2022